No. 2015-1762

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

SASOL NORTH AMERICA, INC., SASOL TECHNOLOGY (PTY) LTD and SASOL ENERGY (USA) LLC,

Plaintiffs-Appellants,

v.

GTLPETROL LLC

Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION
IN CIVIL ACTION NO. 4:13-CV-2918
JUDGE VANESSA D. GILMORE

---

### CORRECTED NONCONFIDENTIAL OPENING BRIEF FOR PLAINTIFFS-APPELLANTS

William C. Slusser
William D. Sprott
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: 713.651.5151
Facsimile: 713.651.5246

*Counsel for Plaintiffs-Appellants
Sasol North America, Inc., Sasol
Technology (Pty) Ltd., and Sasol
Energy (USA) LLC*

August 18, 2015

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Plaintiffs-Appellants certifies the following:

**1.      The full name of every party represented by us is:**

Sasol North America, Inc., Sasol Technology (Pty) Ltd., and Sasol Energy (USA) LLC

**2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:**

N/A

**3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:**

The parent of all Sasol companies is Sasol, Ltd.  No company outside of the Sasol family of companies owns 10% of any of the Sasol companies that have an interest in this case, including the following: Sasol North America, Inc., Sasol (USA) Corporation, Sasol Energy (USA) LLC, Sasol Holdings (USA) (Pty) Ltd., and Sasol Technology (Pty) Ltd.

**4.      The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or expected to appear in this court are:**

Norton Rose Fulbright US LLP (William C. Slusser, William D. Sprott, Melanie B. Rother)

Dated:  August 18, 2015                      /s/ William C. Slusser
                                                              William C. Slusser


                                                              *Counsel for Plaintiffs-Appellants*
                                                              *Sasol North America, Inc., Sasol*
                                                              *Technology (Pty) Ltd., and Sasol*
                                                              *Energy (USA) LLC*

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ..................................................................1

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUE............................................................................1

STATEMENT OF THE CASE.............................................................................1

STATEMENT OF FACTS ...................................................................................3

SUMMARY OF THE ARGUMENT ...................................................................7

ARGUMENT .......................................................................................................7

I.      STANDARD OF REVIEW ......................................................................7

II.    THE DISTRICT COURT ERRED IN DISMISSING WITHOUT
       PREJUDICE ..............................................................................................8

       A.    Error..............................................................................................8
       B.    Declaratory Judgment Jurisdiction.............................................8
       C.    Unresolved Claims ......................................................................9

            1.    GTLpetrol's demand letters. ..............................................9
            2.    GTLpetrol's pleadings. .....................................................13
            3.    Internal emails. .................................................................16

       D.    The delayed construction of Sasol's GTL facility does not affect
            the jurisdiction of the breach of confidentiality and
            misappropriation claims. ...................................................17

            1.    The patent claims. .............................................................17
            2.    The breach of confidentiality and misappropriation of trade
                secrets claims. ..................................................................18

       E.    GTLpetrol's statements were insufficient to divest the District
            Court of subject matter jurisdiction....................................19

            1.    The District Court's basis for dismissal was insufficient. ........20
            2.    Allowing dismissal in this case would frustrate the most
                fundamental purpose behind the Declaratory Judgment Act....26

CONCLUSION ...................................................................................................27

PROOF OF SERVICE .......................................................................................29

CERTIFICATE OF COMPLIANCE..................................................................30

Information Under Protective Order

The material omitted on page 16 concerns information that has been designated "Confidential" under a protective order.   In particular, the material consists of emails between parties having a financial interest in GTLpetrol LLC.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
    133 S.Ct. 721 (2013)..............................................................7, 9, 20, 21, 22, 25

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
    781 F.3d 1356 (Fed. Cir. 2015) ........................................................7

*Arkema Inc. v. Honeywell Intern., Inc.*,
    706 F.3d 1351 (Fed. Cir. 2013) ........................................................17

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
    846 F.2d 731 (Fed. Cir. 1988) ................................................11, 26, 27

*BP Chems., Ltd. v. Union Carbide Corp.*,
    4 F.3d 975 (Fed. Cir. 1993) ................................................................26

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)....................................................................9, 10, 14

*Organic Seed Growers and Trade Ass'n v. Monsanto Co.*,
    718 F.3d 1350 (Fed. Cir. 2013) ........................................................19

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
    556 F.3d 1294 (Fed. Cir. 2009) ........................................................23

*SanDisk Corp. v. STMicroelectonics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) ..........................................23, 24, 25

*Sandoz Inc. v. Amgen Inc.*,
    773 F.3d 1274 (Fed. Cir. 2014) ........................................................7, 10

*Sierra Applied Scis. v. Adv. Energy Indus.*,
    363 F.3d 1361 (Fed. Cir. 2004) ........................................................10

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
    497 F.3d 1271 (Fed. Cir. 2007) ........................................................15, 26

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
    57 F.3d 1054 (Fed. Cir. 1995) ..................................................7, 19, 21, 22, 25

**Rules and Statutes**

18 U.S.C. §§ 1831 et seq. .......................................................................11

28 U.S.C. § 1295(a)(1) ............................................................................1

28 U.S.C. § 1331 .....................................................................................1

28 U.S.C. § 1338 .....................................................................................1

28 U.S.C. § 2201 .......................................... 8, 11, 15, 16, 20, 24, 26, 27

Fed. Cir. R. 32(b) ..................................................................................30

Fed. R. App. P. 32(a)(5) .........................................................................30

Fed. R. App. P. 32(a)(6) .........................................................................30

Fed. R. App. P. 32(a)(7)(B) ...................................................................30

## STATEMENT OF RELATED CASES

There has been no previous appeal in this case, before this Court or any other appellate court.  Counsel for Sasol is not aware of any other cases that would directly affect or be directly affected by the Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. It entered an order dismissing all claims on April 20, 2015, A1–2, which Sasol timely appealed.  This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUE

Is a statement by a declaratory judgment defendant that it does "not intend to pursue claims" against a declaratory judgment plaintiff  an unequivocal disclaimer sufficient to divest the District Court of declaratory judgment jurisdiction of those claims as required by this Court and the Supreme Court?

## STATEMENT OF THE CASE

This appeal arises from an improper dismissal without prejudice of a declaratory judgment case brought initially by Sasol North America, Inc. and Sasol Technology (Pty) Ltd., and thereafter joined by Sasol Energy (USA) (collectively "Sasol").  Sasol filed the declaratory judgment case after receiving threatening, pay-or-else letters from GTLpetrol LLC ("GTLpetrol").  GTLpetrol had alleged three claims against Sasol: (1) breach of a confidentiality agreement; (2) misappropriation of valid trade secrets; and (3) patent infringement.

After unsuccessful efforts by senior executives from both sides to resolve the claims, Sasol sought a declaratory judgment on each claim. GTLpetrol moved to dismiss Sasol's declaratory judgment claims. After extensive briefing, in June 2014, the District Court denied GTLpetrol's motion to dismiss, finding independent jurisdictional grounds for each of the three claims. GTLpetrol subsequently filed counterclaims alleging breach of confidentiality, trade secret misappropriation, and patent infringement.

In the fourth quarter of 2014, the price of oil fell from $100 per barrel to half that price, resulting in the entire energy industry revising capital expenditures. This dramatic development had a negative impact on the economics of Sasol's GTL plant and as a result Sasol's schedule for the GTL plant changed. Because the allegedly infringing US GTL plant would not be operational—and therefore not infringing—before the expiration of GTLpetrol's United States Patent No. 6,534,551 ("the '551 patent") both Sasol and GTLpetrol acknowledged the patent claims should no longer be part of the case. GTLpetrol then moved to dismiss all claims and counterclaims, not just the patent claims. However, GTLpetrol did not unequivocally revoke their right to re-file those claims whenever and wherever it finds doing so more favorable. The District Court initially dismissed the patent claims without prejudice but denied GTLpetrol's motion to dismiss the trade secret and breach of confidentiality claims. Three days later, the District Court amended

its order and dismissed all claims and counterclaims without prejudice, despite the fact that the claims for breach of confidentiality and misappropriation of trade secrets were unaffected by the expiration of the '551 patent, leaving open the very possibility this lawsuit should have resolved.  This appeal follows.

## STATEMENT OF FACTS

The subject of this dispute centers around technology for converting natural gas into higher value liquid hydrocarbons, such as diesel.  This process is known as "gas-to-liquids" or "GTL."  Sasol is the proven world leader in GTL plant design and operation, with over 60 years of related industry experience with massive GTL plants in operation not only in South Africa, but also in Qatar and Nigeria. Because of the abundance of natural gas in North America, the United States presented an attractive area of growth for this industry.  Based on this, Sasol's North American efforts included discussions with various potential partners about the possible construction of GTL plants in the United States and Canada.  In 2010, one of these prospective business partners urged Sasol to meet with GTLpetrol regarding a possible alternative configuration of GTL technology.  After signing a confidentiality agreement and engaging in limited discussions with GTLpetrol, Sasol advised GTLpetrol it was not interested in pursuing a relationship. Sasol found GTLpetrol's ideas were technically incomplete, unproven and impractical, and that its cost estimates were flawed and understated.

During the following two years, Sasol continued to explore US opportunities for its GTL business.  In December 2012, Sasol announced it would construct a $20,000,000,000 (twenty billion dollar) petrochemical complex which included a GTL plant in the United States (Lake Charles, Louisiana).  After the announcement GTLpetrol sent Sasol two letters, in March and June 2013, claiming Sasol was using GTLpetrol's trade secrets in violation of the confidentiality agreement and employing GTLpetrol's patented technology.  Specifically, GTLpetrol accused Sasol of breaching the confidentiality agreement and disclosing GTLpetrol's trade secrets in a presentation given by Sasol representatives at the World GTL Congress conference in the State of Qatar in January 2013.  GTLpetrol went as far as to identify individual slides from Sasol's World GTL Congress conference presentation that allegedly disclosed specific GTLpetrol trade secrets in violation of the confidentiality agreement.  A221–23.  Additionally, GTLpetrol alleged multiple grounds of present and future harm caused by Sasol.  A8–9.  The letters concluded by unequivocally threatening litigation on these issues.  A225 ("Alternatively, we will have no other option than to pursue GTLpetrol legal remedies in appropriate forums.").  After exchanging letters and meeting in London, Sasol attempted to "clear the air" and lift these looming threats of litigation by filing a declaratory judgment case in October 2013.  GTLpetrol moved to dismiss Sasol's claims arguing, notwithstanding its threats and previous

- 4 -

demands for financial compensation, there was not a sufficient controversy to warrant a declaratory judgment, and that the District Court lacked diversity jurisdiction to hear the trade secret and breach of confidentiality claims.

In June 2014, the District Court denied GTLpetrol's motion to dismiss. The Court found Sasol's patent declaratory judgment claims were "sufficiently real to support the exercise of declaratory judgment jurisdiction." A471. Concerning the trade secret and breach of confidentiality claims, the District Court found that "GTLpetrol's first demand letter squarely creates a ripe controversy" because "GTLpetrol claims in the letter that Sasol's [Qatar] PowerPoint presentation itself already gave rise to breach of confidentiality agreement and misappropriation of trade secrets claims." A472 at n.1.

Subsequently, GTLpetrol filed counterclaims of breach of confidentiality, misappropriation of trade secrets, and patent infringement. In its pleadings, GTLpetrol claimed:

> "Sasol's continued misappropriation of GTLpetrol's proprietary and trade secret information for use in the design and construction of the Lake Charles Facility (and other proposed GTL facilities throughout the world) will cause GTLpetrol irreparable harm into the future."

A490.

As litigation continued, the price of oil dropped steeply from $100 per barrel to $47 per barrel. On January 28, 2015, Sasol notified the District Court and GTLpetrol that it would delay construction of its US GTL facility as a direct result

of the unforeseeable and steep drop in the price of oil.  Because of the delay, the

US GTL facility would not be completed during the life of GTLpetrol's '551

patent.  Infringement of the process patent claims was no longer possible due to the

construction delay.  While Sasol and GTLpetrol agreed the patent claims should no

longer be a part of the case, they did not agree to the procedure to accomplish it,

primarily because GTLpetrol insisted on dismissal of all claims and recovery of

attorney fees.  After both parties filed motions, on April 15, 2015, the District

Court dismissed the patent claims.  A1019.  It also denied GTLpetrol's motion to

dismiss both the trade secret and breach of confidentiality claims, as well as deny

GTLpetrol's request for attorney fees.  A1020.  After a scheduling conference, the

District Court amended its order and dismissed all claims without prejudice.  A1–

2.  Since that amended order left the breach and misappropriation claims

unresolved, Sasol moved to amend the order for those claims to be dismissed with

prejudice or not be dismissed.  A1021–24.  In denying Sasol's motion, the District

Court explained the breach of confidentiality and misappropriation of trade secret

claims were dismissed because GTLpetrol "did not intend to pursue [the] claims."[1]

A2.  There was no unequivocal disclaimer by GTLpetrol that it would not, at some

---

[1] This language appears in the Order from which the appeal stems.  A2.  In the District Court's subsequent order,  the Court repeated this language but also characterized GTLpetrol as having "stated its disinterest in pursuing the related standalone tort claims."  A1056–57.

later time of its choosing, reassert these claims either with respect to Sasol's US GTL plant or any other Sasol proposed GTL facilities throughout the world.

## SUMMARY OF THE ARGUMENT

The District Court erred in dismissing without prejudice Sasol's declaratory judgment claims of breach of confidentiality and misappropriation of trade secrets because there remains an unresolved, real, and immediate controversy between the parties.

Only a promise not to sue that unequivocally and irrevocably resolves the conflict between the parties is capable of divesting a court of subject matter jurisdiction. *See Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013); *see also Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995). Remarks by a declaratory judgment defendant that it does "not intend to pursue claims" are insufficient to divest the District Court of subject matter jurisdiction. *See* A2. There has been no resolution to the controversy between the parties.

## ARGUMENT

## I.    <u>STANDARD OF REVIEW</u>

This Court reviews the dismissal of a declaratory judgment action for lack of subject matter jurisdiction *de novo*. *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d 1356, 1361 (Fed. Cir. 2015) (citing *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014)).

- 7 -

## II.   THE DISTRICT COURT ERRED IN DISMISSING WITHOUT PREJUDICE

### A.   Error

As the District Court originally found, the aggressive cease and desist letters sent to Sasol by GTLpetrol created a justiciable controversy between the parties. GTLpetrol's conduct, correspondence, and pleadings reinforce this finding.  The District Court also correctly found the delay in the planned construction of Sasol's GTL facility caused by the steep decline in oil prices had no effect on the District Court's jurisdiction over the breach of confidentiality and misappropriation of trade secrets claims.  However, in a subsequent Amended Order (A1–2) the District Court erroneously concluded that GTLpetrol's "disinterest in pursuing" the breach of confidentiality and misappropriation of trade secrets claims divested the court of jurisdiction.  This finding is inconsistent with the standards for divesting the District Court of declaratory judgment jurisdiction as laid out by the Supreme Court and applied by this Court.  Because the District Court had jurisdiction, it was an error to dismiss the case without prejudice.

### B.   Declaratory Judgment Jurisdiction

The Declaratory Judgment Act provides "[i]n a case of actual controversy . . . any court of the United States . . .  may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  GTLpetrol's conduct,

correspondence, and pleadings created and reinforce the real and immediate controversy between GTLpetrol and Sasol. The controversy between the parties must exist "not only at the time the complaint is filed, but through all stages of the litigation." *Already*, 133 S.Ct. at 726. Such a controversy—and therefore jurisdiction—exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).

### C.    **Unresolved Claims**

In this case: (1) GTLpetrol's aggressive demand letters openly and expressly created a real and immediate controversy between the parties; (2) GTLpetrol's pleadings expanded and reinforced the threats made in the demand letters; and (3) discovered emails of GTLpetrol's strategy verify the unresolved risks to Sasol.

#### 1.    GTLpetrol's demand letters.

By alleging Sasol's past, present, and future activities give rise to breach of confidentiality and misappropriation of trade secrets claims, GTLpetrol created a real and immediate controversy between the parties. As this Court has explained, "a declaratory-judgment plaintiff can sue using past acts as the jurisdictional predicate for the suit, provided the plaintiff has the requisite reasonable

apprehension as to these past acts." *Sierra Applied Scis. v. Adv. Energy Indus.*, 363 F.3d 1361, 1376 (Fed. Cir. 2004).    This is consistent with the Supreme Court's *MedImmune* standard which requires the controversy between the parties to be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.    The reality requirement looks to whether the "plaintiff will take an action that will expose it to potential infringement liability and, if so, exactly what action." *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1278 (Fed. Cir. 2014).    These standards are easily met in the scenario where an intellectual property owner has alleged that a past act by another party has violated its property rights, as is the case here.

GTLpetrol's allegations that Sasol's presentation at the World GTL Congress conference in the State of Qatar on January 15, 2013 constituted a breach of confidentiality and misappropriation of trade secrets were more than sufficient to establish declaratory judgment jurisdiction.  Specifically, GTLpetrol wrote:

> In particular, on January 15, 2013, Andre Steynberg of your firm gave a presentation on day three of the World GTL Congress conference in Qatar in which he represented that Sasol owned certain technology and proprietary information that in fact belongs to GTLpetrol LLC.

A3.    Furthermore, GTLpetrol made additional allegations regarding Sasol's website:

> Mr. Steynberg's presentation was not the only instance in which Sasol misappropriated GTLpetrol's intellectual property.  In fact, Sasol has now incorporated Mr. Steynberg's presentation on its website.

A8.  GTLpetrol ends its initial letter with an express threat:

> Sasol's actions go far beyond the breach of its Confidentiality Agreements with GTLpetrol.  Indeed, the unauthorized use of GTLpetrol's proprietary information exposes Sasol to civil liability for misappropriation of trade secrets including compensatory damages, punitive damages and injunctive relief as well as criminal liability under the Economic Espionage Act of 1996, 18 U.S.C. §§ 1831 et seq.  Please accept this letter as a demand that you immediately refrain from and/or stop using any and all of GTLpetrol's proprietary and trade secret information; remove all references to such information from your website and contact [GTLpetrol] to discuss the issues raised in this letter.  If we do not hear from you by April 1, 2013, we intend to explore all of our legal options.

A9.

GTLpetrol's allegations of breach of confidentiality and misappropriation of trade secrets based on past acts, together with the allegations of substantial harm suffered and the threat of litigation, created the prototypical real case or controversy that the Declaratory Judgment Act was intended to remedy.  *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed. Cir. 1988).

GTLpetrol's demand letters alleged damages, both present and future, as a result of Sasol's alleged breach of confidentiality and misappropriation of trade secrets.  GTLpetrol's first demand letter describes future harms caused by Sasol's alleged breach and misappropriation:

> It therefore seems likely that Sasol has violated the Confidentiality Agreement which, if true, will result in substantial monetary and reputation damages and irreparable harm to GTLpetrol.  In particular,

> Sasol will have put GTLpetrol's proprietary plant design into the public domain which could result in third parties, who are not subject to confidentiality obligations with GTLpetrol, to develop and build plants based upon GTLpetrol's proprietary information.

A8.   GTLpetrol then goes on to explain that the alleged breach and misappropriation have already substantially damaged—and will continue to damage—GTLpetrol:

> Sasol has now publicly stated that it intends to use GTLpetrol's technology as the basis for its 'next generation gas-to-liquids' plant offering.  By doing so Sasol has created confusion in the marketplace concerning the invention and ownership of GTLpetrol's proprietary technology.  GTLpetrol is in discussions with most of the major gas suppliers, equipment manufacturers and other strategic partners in the gas-to-liquids sector.  These conversations are based in large part on GTLpetrol's intellectual property portfolio and have now been compromised by Sasol's claims.

A9.  GTLpetrol's demand letters directly threatened Sasol based on past, present, and future activities and allege multiple forms of ongoing substantial harms that continue to damage GTLpetrol.

In finding that it had declaratory judgment jurisdiction, the District Court found[2]:

> [T]he Court finds that GTLpetrol's first demand letter squarely creates a ripe controversy.  Specifically, GTLpetrol claims in the letter that Sasol's PowerPoint presentation itself already gave rise to breach of confidentiality agreement and misappropriation of trade secrets claims.  Sasol is therefore entitled to pursue declaratory judgment actions on these claims.

---

[2] The Order on declaratory judgment jurisdiction denying GTLpetrol's initial motion to dismiss is not an issue on appeal.

A472 at n.1 (internal citations omitted).

> 2.     <u>GTLpetrol's pleadings.</u>

After the District Court denied GTLpetrol's initial motion to dismiss and confirmed declaratory judgment jurisdiction, GTLpetrol elaborated on its claims in its Answer and Counterclaims.   A474–493.   These pleadings alleged substantial past, present, and future damages from past, present, and future acts of breach of confidentiality and misappropriation of trade secrets.

Consistent with its demand letters, GTLpetrol alleged that Sasol's January 2013 presentation in Qatar disclosed GTLpetrol's trade secrets in violation of the confidentiality agreement:

> 55.     Sasol used GTLpetrol's proprietary and trade secret information in its 2013 Qatar presentation and disclosed the information to numerous third parties.

A490.  The claims go further to allege:

> 36.     Upon information and belief, Sasol disclosed (and continues to disclose) GTLpetrol's Confidential Information to third party engineers and other individuals associated with the proposed Lake Charles Facility.
>
> 37.     Upon information and belief, Sasol intends to utilize GTLpetrol's proprietary technologies and related Confidential information to develop "next generation" GTL plants around the world.
>
> 38.     GTLpetrol has not authorized Sasol to disclose any of its Confidential Information to third parties.
>
> 39.     Upon information and belief, by utilizing the process described in the '551 Patent and GTLpetrol's proprietary technologies, Sasol

- 13 -

> will save **more than one billion dollars ($1,000,000,000)** in capital
> and operational costs associated with the construction and operation
> of the Lake Charles Facility.

A487–88 (emphasis in pleading).

GTLpetrol effectively summarized the accusations against Sasol in a single

paragraph of its counterclaims:

> 56.    Upon information and belief, Sasol used, and continues to use,
> GTLpetrol's proprietary and trade secret information as the basis for
> the design of its Lake Charles Facility and disclosed, and continues to
> disclose, the information to third party engineers and other individuals
> associated with the design and construction of the facility (and
> possibly other facilities throughout the world).

A490.  From this it is clear that GTLpetrol alleges that the entirety of the planning

and implementation of any GTL technology—which is one of the cornerstones of

Sasol's global industry—inherently misappropriates its trade secrets in violation of

the confidentiality agreement and results in substantial harm.  Therefore, consistent

with the *MedImmune* "all the circumstances" standard, "there is a substantial

controversy, between the parties having adverse legal interest, of sufficient

immediacy and reality to warrant the issuance of a declaratory judgment."

*MedImmune*, 549 U.S. at 127 (citation omitted).

In its pleadings, GTLpetrol makes the broad statement: "GTLpetrol is the

owner of proprietary information and know-how relating to GTL technologies and

GTL plant design."    A483.    This claim relates back to the previous broad

statements from GTLpetrol's demand letters that it owns vast categories of

technology in the GTL field.   A4–A7; A221–25.   Sasol disputed GTLpetrol's claim of ownership of technology that Sasol knows to be the proprietary technology of others, or is in the public domain and therefore not protectable as a trade secret.   A219.   These blanket statements of ownership of vast categories of GTL technology, as disputed by Sasol, created a threat to a substantial portion of Sasol's present and growing future GTL business.   This, coupled with the explicit threat of litigation, created exactly the type of situation that the Declaratory Judgment Act was intended to solve.   *See Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) ("Indeed, as we have previously acknowledged, the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue.").

In GTLpetrol's prayer for relief it requests not only extensive damages for misappropriation and breach, but also a permanent injunction preventing Sasol from using or disclosing anything within the broad categories in which GTLpetrol claims trade secret protection:

> GTLpetrol requests that the Court enter judgment in its favor and enter an Order:
>
> 1.   Awarding GTLpetrol all available damages for Sasol's breach of Confidentiality Agreement;
>
> 2.   Awarding GTLpetrol all available damages for Sasol's misappropriation of its proprietary and trade secret information;
>
> 3.   Entering a permanent injunction restraining and enjoining Sasol and its respective officers, agents, servants, employees, attorneys, and

- 15 -

other persons in active concert or participation with them from using or disclosing GTLpetrol's Confidential Information;

A491–92.

GTLpetrol's pleadings reiterate and reinforce each conflict-creating aspect of its demand letters.

### 3.    Internal emails.

In addition to GTLpetrol's demand letters and pleadings, GTLpetrol-related internal emails discovered by Sasol make clear GTLpetrol's true strategy and the importance of resolving all issues.  In an email from April 2013 between parties having a financial interest in GTLpetrol, one such party explained:



A993.  Further evidencing GTLpetrol's intentions to leverage Sasol's financial commitment to a US GTL plant into a cash settlement, an email from September 2013 between these same financially interested parties explains:



A1002

Absent resolution of its rights, Sasol will face exactly the type of harm the Declaratory Judgment Act was made to prevent.  As a world leader in GTL

technology, Sasol has been forced to operate under a cloud of alleged breach and misappropriation by GTLpetrol's threat against any past, current, or future GTL activities. This scenario presents the "quintessential example of a situation in which declaratory relief is warranted." *Arkema Inc. v. Honeywell Intern., Inc.*, 706 F.3d 1351, 1357 (Fed. Cir. 2013).

> **D.** **The delayed construction of Sasol's GTL facility does not affect the jurisdiction of the breach of confidentiality and misappropriation claims.**

The historic, steep collapse of the price of oil in late 2014 caused numerous energy companies to make large adjustments in their businesses. *See* A975–78. Sasol was not immune to these market pressures, and as a result in January 2015 announced a delay in the construction of the planned Lake Charles GTL facility. Sasol immediately alerted the District Court and GTLpetrol to this change in schedule. Because of the broad threats and accusations made by GTLpetrol in its demand letters and pleadings, declaratory judgment jurisdiction was independent of the patent claims, and the delayed construction had no effect on the District Court's jurisdiction over the breach and misappropriation declaratory judgment claims.

> **1.** The patent claims.

As a result of the delay in the construction of Sasol's Lake Charles GTL facility, GTLpetrol's '551 patent will expire before the plant could possibly be

operational. Because the '551 patent recites method claims that can only be infringed by actually performing the claimed steps, any risk of alleged infringement involving the GTL plant was eliminated by the change in schedule. In stark contrast to the breach of confidentiality and misappropriation of trade secrets claims, GTLpetrol's pleadings make clear that the only act of alleged patent infringement was Sasol's GTL facility in Lake Charles. A491. Upon notifying the District Court of the delay, both Sasol and GTLpetrol acknowledged the patent claims should no longer be heard by the District Court. The District Court agreed and dismissed the patent claims without prejudice.

> 2.   The breach of confidentiality and misappropriation of trade secrets claims.

The lack of continuing controversy involving the patent claims stands in stark contrast to the unchanged disputes related to the breach of confidentiality and misappropriation of trade secrets claims. As the District Court initially ruled in denying GTLpetrol's first motion to dismiss, prior to the delay in construction:

> To the extent that GTLpetrol also alleges that there is no justiciable controversy regarding the state law claims, the Court finds that GTLpetrol's first demand letter squarely creates a ripe controversy. Specifically, GTLpetrol claims in the letter that Sasol's PowerPoint presentation itself already gave rise to breach of confidentiality agreement and misappropriation of trade secrets claims. Sasol is therefore entitled to pursue declaratory judgment actions on these claims.

A472 at n.1 (internal citations omitted). The District Court's initial ruling is further reinforced by the laundry list of accusations made in GTLpetrol's demand letters, pleadings, and internal emails, all of which are wholly separate and independent from the patent claims and the completion of Sasol's Lake Charles GTL facility. *See supra* Part II(C)(1)–(3). From the damages that GTLpetrol claims have already accrued to the damages claimed to its business prospects and reputation in the industry, GTLpetrol created a substantial controversy that does not rise and fall with the construction of Sasol's Lake Charles facility or the patent claims. The delay changed nothing; the District Court continued to have declaratory judgment jurisdiction on the breach and misappropriation claims.

### E. **GTLpetrol's statements were insufficient to divest the District Court of subject matter jurisdiction.**

The District Court erred in dismissing Sasol's breach of confidentiality and misappropriation of trade secrets declaratory judgment claims on the basis that GTLpetrol "did not intend to pursue claims" against Sasol. *See* A2. This Court has long held, and the Supreme Court has recognized, under certain circumstances "a covenant not to sue a declaratory judgment plaintiff can moot a controversy between the parties." *Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1357 (Fed. Cir. 2013); *see also Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995).

- 19 -

To eliminate the controversy between the parties and divest the court of jurisdiction, the declaratory judgment defendant has the burden of showing that the covenant not to sue is of sufficient breadth and force "to show that it could not reasonably be expected to resume its enforcement efforts" against the declaratory judgment plaintiff. *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 727 (2013) (internal citations omitted). GTLpetrol has not come remotely close to meeting this burden.

The District Court's dismissal of Sasol's breach of confidentiality and misappropriation of trade secrets claims should be reversed for two reasons: (1) the District Court's basis for dismissal was insufficient to divest it of declaratory judgment jurisdiction; and (2) the fundamental purpose behind the Declaratory Judgment Act would be subverted if dismissal was upheld.

1.    The District Court's basis for dismissal was insufficient.

The District Court dismissed the claims because GTLpetrol "advised the Court that it *did not intend to pursue claims* relating to past purported 'misappropriations of trade secrets' or 'breaches of confidentiality.'" A2 (emphasis added). Not only is this entirely inconsistent with the strongly-worded demand letters GTLpetrol sent prior to litigation and its own pleadings, nowhere in the District Court's order does the Court explain that GTLpetrol has promised to do—or refrain from doing—anything. Intent not to pursue is not a promise not to sue. Therefore, it does not resolve the controversy between the parties. Intentions

and actions can be quite different things.    Intervening circumstances can sway intentions, but not undo an unequivocal covenant not to sue.

Cases where this Court or the Supreme Court found that a promise not to sue divested the district court of declaratory judgment jurisdiction all involve significantly more specific and unequivocal language than the "did not intend to pursue" language relied upon by the District Court.  *See e.g. Already*, 133 S.Ct. at 725; *see also Super Sack*, 57 F.3d at 1056.

In *Already, LLC v. Nike, Inc.*, the Supreme Court's "covenant not to sue" analysis centered around a determination of the breadth of the covenant Nike had issued.   Having concluded that "it is hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant," the Court held that the District Court had been divested of declaratory judgment jurisdiction because the covenant completely resolved the controversy between the parties.  133 S.Ct. at 728 (internal citation omitted).  The "did not intend to pursue claims" remark in the present case does not come anywhere close to this standard, nor does it resolve the controversy between the parties.  Merely remarking that GTLpetrol currently has "no desire to engage in expensive litigation" in no way affects the controversy between the parties.  A1028.

Similarly, in the seminal case on the topic of covenants not to sue, this Court in *Super Sack* explained that a District Court may be divested of declaratory

judgment jurisdiction as a result of a covenant not to sue because the covenantor "is forever estopped by [the covenant] . . . from ever asserting liability against the [declaratory judgment plaintiff]." 57 F.3d at 1059. This Court succinctly explained that the estoppel created from the covenant "removes from the field any controversy sufficiently actual to confer jurisdiction over [the] case." *Id.* In *Super Sack*, this Court held that the District Court was divested of declaratory judgment jurisdiction based on Super Sack's covenant not to sue: "Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase." *Id.* at 1056. This unequivocal, irrevocable statement caused Super Sack to be "forever estopped . . . from asserting liability against Chase in connection with any product that Chase made, sold, or used on or before July 8, 1994." *Id.* at 1059. As a result, no controversy existed between the parties and the case was properly dismissed.

In stark contrast to the facts of *Super Sack* and *Already*, GTLpetrol's remarks that it "[does] not intend not to pursue claims" and currently has "no desire to engage in expensive litigation" against Sasol cannot be plausibly described as "unconditional and irrevocable," nor as an "unequivocal, irrevocable" statement, unlike the covenants in *Already* and *Super Sack*. *See Already*, 133 S.Ct. at 725; *see also Super Sack*, 57 F.3d at 1056. In fact, GTLpetrol's statement of

disinterest relied upon by the District Court does not even reach the level of disavowal that this Court has found insufficient to divest a district court of declaratory judgment jurisdiction. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1296 (Fed. Cir. 2009) (holding the district court was not divested of declaratory judgment jurisdiction).

In a more analogous case, this Court in *SanDisk Corp. v. STMicroelectronics, Inc.* held that STMicroelectronics' ("ST's") promise not to sue was insufficient to eliminate the controversy between the parties. 480 F.3d 1372, 1382 (Fed. Cir. 2007). In *SanDisk*, ST approached SanDisk with a list of patents that "might be of interest" to SanDisk, and requested that the parties meet to discuss a cross-license agreement. *Id.* at 1374. After multiple meetings between the parties, ST requested that SanDisk prepare and present "any infringement analyses" of the identified patents for their next meeting and requested that the parties' discussions be treated as "settlement discussions" under the Federal Rules of Evidence. *Id.* at 1375. At the end of that meeting, ST gave SanDisk reports "showing how elements of ST's patent claims cover SanDisk's products." *Id.* ST's counsel further told SanDisk's counsel that "ST has absolutely no plan whatsoever to sue SanDisk." *Id.* at 1376. Subsequently, SanDisk filed declaratory judgment claims against ST. *Id.* The district court dismissed SanDisk's claims for lack of subject matter jurisdiction as a

result of ST's statement that it had no plan to sue SanDisk. *Id.* This Court reversed the dismissal, explaining:

> We decline to hold that [ST's counsel's] statement that ST would not sue SanDisk eliminates the justiciable controversy created by ST's actions, because ST has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite [ST's counsel's] statement. Having approached SanDisk, having made a studied and considered determination of infringement by SanDisk, having communicated that determination to SanDisk, and then saying that it does not intend to sue, ST is engaging in the kinds of extra-judicial patent enforcement with scare-the-customer-and-run tactics that the Declaratory Judgment Act was intended to obviate. ST's statement that it does not intend to sue does not moot the actual controversy created by its acts.

*Id.* at 1382–83 (internal citations omitted). Accordingly, this Court remanded the case for further proceedings because the controversy created by ST's pre-suit conduct still existed.

The facts of this case, while similar to the facts of SanDisk, go far above and beyond those in SanDisk to show that statements relied on by the District Court did not remove any controversy between the parties so as to divest the District Court of declaratory judgment jurisdiction.

The "direct and unequivocal" statement made by ST's counsel which this Court found insufficient to divest the District Court of jurisdiction in *SanDisk* is far more concrete than anything relied upon by the District Court in this case. In *SanDisk*, ST's counsel stated that "ST has absolutely no plan whatsoever to sue SanDisk." *Id.* at 1382. Here, the District Court dismissed based on GTLpetrol's

mere statement that "it did not intend to pursue claims" against Sasol.  A1057.  As this Court explained, a declaratory judgment defendant's "statement that it does not intend to sue does not moot the actual controversy created by its acts." *SanDisk*, 480 F.3d at 1383.

As the District Court initially held, GTLpetrol created a justiciable controversy through the accusations and threats it made in its pre-suit demand letters.  The controversy was reinforced by accusations made in GTLpetrol's pleadings.  Consistent with this Court's ruling in *SanDisk*, GTLpetrol should not be able to avoid declaratory judgment jurisdiction by stating it does not intend to currently sue Sasol.  Without contradicting its intention not to pursue claims, GTLpetrol could change its mind, become interested in pursuing its offensive case, and file misappropriation and breach claims against Sasol at any time after dismissal of Sasol's declaratory judgment claims.  Because of this, no estoppel is attached to GTLpetrol's intent not to sue, thus—under the analysis performed by this Court in *Super Sack* and the Supreme Court in *Already*—the controversy existing between the parties is unaffected.  The current intention not to pursue relied on by the District Court offers no solace for Sasol.  It does not come close to restricting the available future claims GTLpetrol can and will bring against Sasol, nor does it affect the controversy between the parties.  On this basis alone, this Court should find that GTLpetrol's statement that "it did not intend to pursue

claims" against Sasol is insufficient to divest the District Court of jurisdiction. Sasol is entitled to "clear the air" and adjudicate the controversy between the parties.

> 2.  <u>Allowing dismissal in this case would frustrate the most fundamental purpose behind the Declaratory Judgment Act.</u>

The purpose of the Declaratory Judgment Act is to allow parties who have been threatened with litigation to clear the air by preemptively suing and having a court rule on the controversy. *Arrowhead*, 846 F.2d at 734–35. This Court has repeatedly explained that the purpose underlying the Declaratory Judgment Act "is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993); *see also Sony*, 497 F.3d at 1284 ("Indeed, as we have previously acknowledged, the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue.").

Without the right afforded to declaratory judgment plaintiffs by the Act, threats of litigation would loom over businesses "infect[ing] the competitive environment of the business community with uncertainty and insecurity." *Arrowhead*, 846 F.3d at 735. This is precisely the situation in this case. GTLpetrol has expressly threatened Sasol with litigation and created a cloud of uncertainty surrounding and impacting Sasol's entire GTL business. Allowing

GTLpetrol to dismiss this case because it does not currently intend to sue Sasol on the same grounds it has expressly threatened would create exactly the anti-competitive environment the Declaratory Judgment Act was intended to prevent.

As Judge Markey eloquently described when discussing the "type of sad and saddening scenario that led to the enactment of the Declaratory Judgment Act":

> In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Id*. at 734–35. Sasol is attempting to do just that: clear the air.

## CONCLUSION

Sasol did not pick this fight, but did initiate getting it resolved and it is entitled to have the District Court resolve it. The District Court's dismissal of Sasol's breach of confidentiality and misappropriation of trade secrets declaratory judgment claims should be reversed, and the case remanded for further proceedings.

Dated:  August 18, 2015
/s/ William C. Slusser
William C. Slusser
William D. Sprott

NORTON ROSE FULBRIGHT US LLP
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: 713.651.5151
Facsimile: 713.651.5246

*Counsel for Plaintiffs-Appellants
Sasol North America, Inc., Sasol
Technology (Pty) Ltd., and Sasol
Energy (USA) LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SASOL NORTH AMERICA, INC. el al. | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| V. | § | Civil Action 4:13-cv-02918 |
| | § | |
| GTLpetrol LLC, | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

This Order amends the Court's previous Order denying Plaintiff's motion for summary judgment and Defendant's motion to dismiss. (**Instrument No. 57**).

A court has subject matter jurisdiction under the Declaratory Judgment Act only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Based on the representations made in the pleadings before the Court, IT IS HEREBY ORDERED THAT Plaintiffs' claims for declaratory judgment of no patent infringement (Count 3) and patent invalidity (count 4) are dismissed without prejudice for lack of subject matter jurisdiction based on Plaintiffs' lack of "meaningful preparation to conduct potentially infringing activity." *See Assoc. of Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). IT IS FURTHER ORDERED THAT Defendant's corresponding counterclaim for patent infringement (Count 3) is dismissed without prejudice for lack of subject

matter jurisdiction. Accordingly, IT IS ORDERED THAT Plaintiffs' motion for summary judgment (**Instrument No. 48**) is **DENIED as moot**.

Furthermore, on April 17, 2015, counsel for Defendant advised the Court that it did not intend to pursue claims relating to past purported "misappropriations of trade secrets" or "breaches of confidentiality." Therefore, there is no substantial controversy of sufficient immediacy to warrant declaratory judgment on the remaining claims. *See MedImmune*, 549 U.S. at 127.

Based on the foregoing, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss Plaintiff's claims for declaratory judgment that they did not breach a confidentiality agreement (Count 1) and that they did not misappropriate trade secrets (Count 2) is **GRANTED**, and those claims are dismissed without prejudice for lack of subject matter jurisdiction. IT IS FURTHER ORDERED THAT Defendant's corresponding counterclaims for misappropriation of trade secrets and breach of confidentiality are dismissed without prejudice.

IT IS HEREBY ORDERED THAT all of Plaintiff's claims and Defendant's counterclaims are dismissed without prejudice. All other requested relief is **DENIED**.

The Clerk of the Court shall provide a true copy of this Order to all counsel of record.

SIGNED on this the _20th_ day of April, 2015, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**

## PROOF OF SERVICE

The undersigned hereby certifies that on August 18, 2015, I electronically filed the foregoing NONCONFIDENTIAL OPENING BRIEF FOR PLAINTIFFS-APPELLANTS with the Clerk of the Court for the United Stated Court of Appeals for the Federal Circuit by using the appellate CM/EMF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Participants were also served by email to:

> Andrew K. Fletcher (FletcheA@pepperlaw.com)
> Brian A. Berkley (berkleyb@pepperlaw.com)
> Richard M. Weibley (weibleyr@pepperlaw.com)
> Rick Murphy (murphyg@pepperlaw.com)
> Pepper Hamilton LLP
> 500 Grant Street, Suite 500
> Pittsburgh, Pennsylvania 15219

Dated:  August 18, 2015                    /s/ William C. Slusser
                                           William C. Slusser

                                           *Counsel for Plaintiffs-Appellants*
                                           *Sasol North America, Inc., Sasol*
                                           *Technology (Pty) Ltd., and Sasol*
                                           *Energy (USA) LLC*

## CERTIFICATE OF COMPLIANCE

Counsel for Plaintiffs-Appellants hereby certifies that:

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6347 words, excluding the parts of the brief exempted by Fed. R. Appl. P. 32 (a)(7)(B)(iii) and Fed. Cir. R. 32(b).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Times New Roman, a proportionally spaced typeface, using Microsoft Word 2010.

Dated:  August 18, 2015                    /s/ William C. Slusser_____
                                           William C. Slusser

                                           *Counsel for Plaintiffs-Appellants*
                                           *Sasol North America, Inc., Sasol*
                                           *Technology (Pty) Ltd., and Sasol*
                                           *Energy (USA) LLC*